# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TYRONE M. COATES, | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. PJM-18-3281 |
| DPSCS, | * | |
| OFF. ATTY. GEN., | | |
| WEXFORD HEALTH SOURCES, INC., | * | |
| MICHAEL SUMMERFIELD, M.D., | | |
| HOLLY PIERCE, N. | * | |
| FRANK BISHOP, Warden | | |
| Defendants | * | |

\*\*\*

## MEMORANDUM OPINION

Tyrone Coates is an inmate at North Branch Correctional Institution (NBCI). In this Complaint filed pursuant to 42 U.S.C. § 1983, Coates alleges that he has received improper medical care. ECF No. 1 at pp. 2-3. Pending before the Court are Defendants' dispositive motions: Michael Summerfield M.D. filed a Motion to Dismiss for Lack of Jurisdiction (ECF No. 17); Warden Bishop and the Department of Public Safety and Correctional Services (DPSCS), collectively "the State Defendants," filed a Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 27); and Wexford Health Sources, Inc. (Wexford) and Nurse Practitioner, Holly Pierce, collectively "the Medical Defendants," filed a Motion to Dismiss or, in the Alternative, for Summary Judgment. ECF No. 29. Pursuant to the dictates of *Roseboro v. Garrison,* 528 F.2d 309 (4th Cir. 1975), Coates was notified of Defendants' Motions and that he was entitled to file oppositions with supporting materials, including affidavits, declarations and other records. ECF Nos. 18, 28, 30. Coates filed an Opposition to Summerfield's Motion to Dismiss. ECF 22. The State and Medical Defendants' dispositive Motions are unopposed. Also

pending is Plaintiff's Motion for Appointment of Counsel, which will be denied without prejudice. ECF No. 40.

After reviewing the submissions, the Court finds that no hearing is necessary to resolve the pending motions. *See* D. Md. Local R. 105.6. For the reasons set forth below, the State and Medical Defendants' Motions (ECF Nos. 27, 29), treated as Motion for Summary Judgment, will be GRANTED. Summerfield's Motion to Dismiss (ECF No. 17) will be GRANTED. Because Summerfield's dispositive motion addresses solely Coates' negligence and malpractice claims, Summerfield will be granted twenty-eight days to file a response to Coates' Eighth Amendment claim of inadequate medical care.

## BACKGROUND

Coates is a 36 year old man with a medical history for keratoconus and acute keratoconus hydrops.[1] Decl. of Asresahegn Getachew, M.D., ECF No. 29-5 ¶ 5. Medical Rec. ECF No. 27-4 at 2, 4, 13, 113-114. Keratoconus is a progressive eye disease which causes normally round corneas to thin and bulge into a conical shape to distort vision. The cause of the condition is unknown and there is no cure, although progression of the disease can sometimes be delayed. Keratoconus is generally treated with glasses, contact lenses, and, as a last resort surgery. Getachew Decl.., ECF No. 29-5 ¶5. Coates is on a waiting list for corneal transplants. ECF No. 29-5 ¶9.

I.     **Coates' Allegations**

Coates filed this Complaint on October 24, 2018, alleging that on December 18, 2015, he filed an Administrative Remedy Procedure (ARP) request because he needed surgery on his left eye. He states his left eye has a contact lens and his "right eye was in constant pain." *Id*. at 2. He explains that in 2010, he went to the Johns Hopkins Hospital Wilmer Eye Clinic where he was

---

[1] Corneal hydrops is a complication of keratoconus. A tear in the corneal allows fluid from inside the eye to leak into the corneal tissue. ECF No. 29 n. 1

diagnosed with severe keratoconus and recommended for a corneal transplant. *Id.* He claims Dr. Summerfield refused him the surgery multiple times and faults Warden Bishop for failing to intervene. *Id; see also* ECF No. 6 at 1. Coates requests injunctive relief (surgery and medical treatment) and punitive and compensatory damages against Defendants in their official capacities for "negligence and indifference of DPSCS staff, and Wexford Health Sources and employees" for his pain and suffering since October 2012.[2] ECF No. 1 at 3.

On November 30, 2018, Coates supplemented the Complaint, adding Holly Pierce as a defendant and other details in support of his claims. ECF No. 6. He alleges that Summerfield denied him surgery "on multiple occasions" because he has "somewhat of a good eye because his left eye has a contact" and he gets into too many fights in prison. ECF No. 6 at 1. Coates faults Pierce for refusing to order him pain medications, to see him at sick call, and to order his surgery. *Id.* He alleges Pierce accused him of seeking medication "to get high." *Id.*

Coates faults Bishop because "he knew about my situation." Bishop found Coates' ARP about Summerfield meritorious in part, but later amended the response and dismissed it. Coates claims Bishop and DPSCS' actions fail to comply with the "contract" to take care of his needs under Department of Correction (DOC) policy. *Id.* at 2. Coates asserts Wexford is aware of his condition, hires unqualified providers, and fails to hol[d] up to their contract." *Id.*

On July 10, 2019, Coates filed a letter asking for appointment of counsel because he "can't see" and is relying on an inmate to read his legal mail.". ECF 40. Coates also states he has an eighth grade education lacks familiarity with the law. *Id.* A pro se prisoner does not have a general right to counsel in a § 1983 action." *Evans v. Kuplinski*, 713 Fed. Appx. 167, 170 (4th Cir. 2017). A federal district court judge's power to appoint counsel under 28 U.S.C.§ 1915(e)(1) is

---

[2] Apart from seeking damages for alleged pain beginning in 2012, the dates in Coates' allegations of fact pertain to his treatment beginning in 2015.

discretionary, and an indigent claimant must present "exceptional circumstances." *Miller v. Simmons*, 814 F.2d 962, 966 (4th Cir. 1987).  Exceptional circumstances exist where a "pro se litigant has a colorable claim but lacks the capacity to present it."  *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by *Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 298 (1989) (holding that 28 U.S.C. § 1915 does not authorize compulsory appointment of counsel).

Thus far, Coates has pursued his claims through the administrative process, adequately presented his claims in his Complaint and supplement, filed an opposition and motion for a default judgment, and written to inform the Court that he had not received a copy of the Medical Defendants' Motion to Dismiss or, in the Alternative Motion for Summary Judgment.  ECF No. 22, 27-5, 32, 33, 35.  He acknowledges that he has secured assistance for reading legal documents, and his lack of familiarity with the law is insufficient alone to warrant appointment of counsel. Because his case against Dr. Summerfield is continuing, the Court will deny Coates' Motion for Appointment of Counsel without prejudice subject to reconsideration after Summerfield files his response to Coates' Eighth Amendment claim.

## STANDARD OF REVIEW

Fed. R. Civ. P. 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. *See Khoury v. Meserve*, 628 F. Supp. 2d 600, 606 (D. Md. 2003), aff'd, 85 F. App'x 960 (4th Cir. 2004).  Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction.  *See Demetres v. East West Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *see also Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).  A challenge to subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either a facial challenge, asserting that the allegations pleaded in the complaint are

insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "'that the jurisdictional allegations of the complaint [are] not true.'" *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted) (alteration in original); *see also Buchanan v. Consol. Stores Corp.*, 125 F. Supp. 2d 730, 736 (D. Md. 2001).

In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns*, 585 F.3d at 192; accord *Clear Channel Outdoor, Inc. v. Mayor & City Council of Baltimore*, 22 F. Supp. 3d 519, 524 (D. Md. 2014). In a factual challenge, on the other hand, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192. In that circumstance, the court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see also Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the Plaintiff's complaint. *See Edwards v. Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). The Supreme Court articulated the analytical framework:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (*abrogated on other grounds*). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, *ibid.*; *Sanjuan v. American Board of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, *see Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a

right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), *see, e.g.*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508, n.1 (2002); *Neitzke v. Williams*, 490 U.S. 319, 327(1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (footnotes omitted).

This standard does not require a defendant establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Id.* at 561. Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id*. at 562. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles Cty Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

The State and Medical Defendants caption their Motions in the alternative for summary judgment and attach documents beyond the Complaint for the Court's consideration. Coates has not submitted a Rule 56(d) affidavit expressing a need for discovery. Accordingly, the Court will treat Defendants' Motions as motion for summary judgment.

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat

the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing *that there is a genuine issue for trial.'*" *Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d* 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations...admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Once a motion for summary judgment is properly made and supported, the nonmovant has the burden of showing that a genuine dispute of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87 (1986).

A "material fact" is one that might affect the outcome of a party's case. *Anderson*, 477 U.S. at 248; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001) (citing *Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *accord Hooven-Lewis,* 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *Anderson*, 477 U.S. at 248.

## DISCUSSION

Section 1983 of Title 42 of the United States Code provides that a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. However, § 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979) To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011), *cert. denied*, 565 U.S. 823.

Section 1983 also requires a showing of personal fault based upon a defendant's own conduct. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). There is no respondeat superior liability under § 1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

Liability of supervisory officials in § 1983 claims "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir.

1984)).  To establish supervisory liability, a plaintiff must show the "supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury" to the plaintiff;  (2) that the supervisor's response was so "inadequate as to show deliberate indifference to or tacit authorization" and (3) that there was an "affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

The Court is mindful that Coates is a pro se litigant whose pleadings must be accorded liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Coates alleges Summerfield and Bishop  were "negligent" and showed "indifference," but does not specifically allege a violation of a constitutional provision or federal law.  A claim for negligence is premised on state law and does not support a constitutional claim.  In his Reply to Summerfield's Motion to Dismiss, however, Coates makes clear his intention to raise an Eighth Amendment claim for inadequate medical care.

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016).  To succeed in an Eighth Amendment suit alleging denial of adequate medical care, a plaintiff must show the defendant's actions or inaction amounted to deliberate indifference to a plaintiff's serious medical need. *See Estelle*, 429 U.S. at 106; *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).

Deliberate indifference to a serious medical need requires proof that, objectively, the plaintiff was suffering from a serious medical need and that, subjectively, the defendant was aware of the need for medical attention but failed either to provide it or to ensure that the needed care

was available. *See Farmer v. Brennan*, 511 U.S. 825 837 (1984). The subjective component of the examines whether the defendant acted with reckless disregard in the face of a serious medical condition, *i.e.*, with "a sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). "It is not enough that the defendant *should* have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Lightsey*, 775 F.3d at 178 (emphasis in *Lightsey*). The Fourth Circuit explains: "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997).

Negligence or malpractice on the part of . . . doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference." *Johnson v. Quinones,* 145 F.3d 164, 166 (4th Cir. 1998). The treatment rendered must be so grossly incompetent or inadequate as to shock the conscience or to be intolerable to fundamental fairness. *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citation omitted) (overruled in part on other grounds by *Farmer*, 511 U.S. at 837; aff'd in pertinent part by *Sharpe v. S.C. Dep't of Corr.*, 621 Fed.Appx. 732 (Mem) (4th Cir. 2015)).

## I.    Dr. Summerfield

Summerfield moves pursuant to Fed.R. Civ. P. 12b(b)(1) to dismiss the negligence claims against him for lack of jurisdiction. Summerfield asserts Coates was diagnosed with keratoconus in each eye, with the right eye worse than the left. Coates complained of vision loss in both eyes and wears contact lenses to improve his eyesight. Coates was approved for a corneal transplant, but, "relying on his clinical judgment," Summerfield recommended against the procedure because of Coates "significantly elevated risks for injury and chances for further vision loss." ECF No. 17 at 5. Summerfield was aware of Coates' past and recent history of physical altercations in prison

and recommended that until these events became less likely to occur, a corneal transplant was not a reasonable option for him. *Id*. at 6.

Summerfield asserts that Coates failed to comply with the certain mandatory conditions precedent to bring a claim for medical negligence or medical malpractice in Maryland. Under Maryland law, a plaintiff in a medical malpractice action must file a Statement of Claim and a Certificate of Qualified Expert in the Health Claims Alternative Dispute Resolution Office ("HCADRO") of Maryland as a condition precedent to proceeding with the claim in court. The certificate of a qualified expert must attest to the defendant's departure from the applicable standard of care and that Defendant proximately caused Plaintiff's injury. *See* Md. Code Ann., Cts. & Jud. Proc. § 3-2a-04(b)(1). A claimant also must exhaust a state arbitration process as a precondition to bringing a civil action on the claim in state or federal court. *See* § 3-2A-04; *Rowland v. Patterson*, 882 F.2d 97, 97 (4th Cir. 1989). This pre-suit filing requirement applies to claims sounding in medical negligence seeking damages in an amount that invokes the jurisdiction of the state circuit courts, including cases filed in federal court. *See Davison v. Sinai Hospital of Balt. Inc*., 462 F. Supp. 778, 779-81 (D. Md. 1978), *aff'd*, 617 F.2d 361 (4th Cir. 1980). A malpractice action must be dismissed if a plaintiff does not comply with these requirements. Coates' claims, to the extent they are construed as claims of medical negligence or malpractice are subject to the Act's requirements. Because Coates does not demonstrate he has satisfied these prerequisites, his state claims will be dismissed without prejudice.

Summerfield, however, does not address Coates' Eighth Amendment claim in his dispositive motion. Accordingly, the Eighth Amendment claim survives the Motion to Dismiss, and Summerfield will be granted twenty-eight days to respond to the constitutional claim. Coates will have an opportunity to file a Reply in the event Summerfield moves for dismissal or summary

judgment.

## II. Medical Defendants

The Medical Defendants have filed affidavits and verified medical records with their dispositive motion, in support of their motion. ECF No. 29-4. This information, which is undisputed by Coates, is summarized below in relevant part.

Once diagnosed, the monitoring and treatment of keratoconus is typically managed by an ophthalmologist, not by primary care medical providers. Getachew Decl. ECF No. 29-5 ¶5; ECF No.29-4 at 3. Wexford does not employ or control the on-site ophthalmologists who practice within the DPSCS system. *Id.* [3]

Since at least September 2015, Coates has been monitored and treated for complaints of eye pain caused by keratoconus. Getachew Decl. EC No. 29-5 ¶6. On November 18, 2015, Mahboob Ashraf, M.D. examined Coates for his complaints of right eye pain and referred him to Dr. Summerfield.

On January 13, 2016, Summerfield saw Coates who reported right eye discomfort, aching, and tearing, without his contact lens. Summerfield observed keratoconus in both eyes, but noted that there was no inflammation, epithelial defect, hydrops, or other explanation for Coates' "subjective pain." ECF No. 29-4 at 5, 6. Coates told Summerfield that he "wants a corneal transplant" for the pain. *Id.* Summerfield attempted to discuss with Coates that surgery "is not usually a good solution for pain and is usually reserved for when vision needs to be restored." *Id.* The vision in Coates' right eye was assessed as counting fingers at 8 feet, and his corrected left eye vision with a scleral lens,[4] was 20/70. Summerfield referred Coates to the University of

---

[3] This information is contradicted by Bishop's statemen in his affidavit which states "The Defendant Doctor in the above captioned case was assigned to NBCI, but he was employed by the private health care contractor." Declaration of Warden Frank Bishop, Jr., ECF No. 27-3 at 1¶4.
[4] A scleral lens is a large diameter gas permeable lens designed to minimize pressure to the cornea. ECF No. 29 n.2.

Maryland Medical System for a second opinion. *Id.*at 2-6. [5]

On March 9, 2016, Summerfield examined Coates, noting that he was wearing his lenses all day and every day, and there was improved vision in his corrected left eye. Coates' left eye corrected vision was 20/50 and the right eye vision was assessed as counting fingers at 8 feet. Summerfield reserved consideration for penetrating keratoplasty (PK) in the right eye.[6] He referred Coates to optometry for glasses to wear with the lenses. *Id.* at 7.

Summerfield examined Coates again on May 11, 2016. Coates' vision measured the same as it had at his March 9, 2016 examination: the left eye corrected vision was 20/50 and the right eye vision was assessed as counting fingers at 8 feet. They discussed options for treating his right eye. He informed Summerfield that he wanted a corneal transplant. Summerfield noted Coates' history of involvement in assaults and that he was hit last year in his left eye.[7] They discussed risks of surgery including post-operative wound leak, glaucoma, cataract formation, and corneal rejection. Summerfield indicated that he was unconvinced the benefits outweighed the risks of the surgery in this instance. *Id.* at 8.

Keratoconus does not typically cause medical pain. Getachew Decl. ECF No. 29-5 ¶; *see also* Med Rec. ECF No. 28-4 at 2 (indicating that Dr. Summerfield advised that patients with keratoconus do not typically experience pain). Nonetheless, primary care medical providers have prescribed and treated Coates with Motrin, Tylenol, Ibuprofen 600 mg., Naproxen,. and Mobic to address his complaints of eye pain. ECF No. 29-5 ¶7; ECF 29-4 at 2,8. Coates has also been prescribed artificial tears, Atrophine, Muro 128, and prednisone acetate eye drops for discomfort

---

[5] The results of the referral are not in the record.
[6] Penetrating keratoplasty (PK) is a type of corneal transplant surgery. ECF No. 29 n. 3; *see also* https://medlineplus.gov/ency/article/003008.htm (viewed July 25, 2019).
[7] Defendants footnote in their Memorandum Opinion, a medical journal which they assert states that PK presents a greater vulnerability to trauma after surgery. ECF No. 29-4 at 8.

by an ophthalmologist.  Getachew Decl.  ECF No. 29-5 ¶7.  It is noted that Coates frequently requests Tylenol #3, for his eye pain.  Tylenol #3 is a medication that contains an opioid narcotic and is not indicated for long term treatment of chronic pain.  Getachew Decl.  ECF No. 29-5 ¶7; *see also* Medical Records ECF 29-4 at 40-41.

In regard to Coates' claim that Pierce did not order surgery for him, Pierce, who is a Nurse Practitioner, does not  have authority to unilaterally order surgery.  Getachew Decl. ECF No.  29-5 ¶8.  Pierce could only submit a consultation request for surgery, for approval by the regional director and utilization management. *Id.*

Pierce saw Coates on August 8, 2016, after his left scleral lens had broken while he was cleaning it.  Pierce submitted an order for a replacement lens and replaced his Tylenol # 3 with Mobic for pain relief.  Coates subsequently complained the Mobic did not provide effective pain relief.  *Id*. at 18, 19.  On September 1, 2016, Coates told Pierce "I need real pain medication for my eyes"  and demanded with a raised voice that "somebody better be givin' me something." ECF No. 29-4 at 19.  Coates refused to allow a physical assessment.  *Id.*  The medical report for that date continues:

> Patient advised a referral to an ophthalmologist can be requested.  Patient refused stating "Hell no.  I need something for my pain right now."  Patient was unable to describe the eye pain but simply reported "they hurt real bad." Patient is demanding an increase for Tylenol #3 as the expired order was not strong enough.  Patient advised the medication was not indicated at this time. Patient reported he would continue to place sick calls until he got what he wanted.
>
> ****
> Tylenol #3 tablets two time per day is not indicated.  Dr. Ashraf consulted and agreed.

*Id.*

On November 23, 2016, ophthalmologist Paul Goodman, M.D., examined Coates for complaints of bilateral eye pain.  Goodman prescribed artificial tear drops.  Coates' right eye vision

was assessed as counting fingers at 3 feet, and his corrected left eye vision was 20/50. *Id*. at 26.

On May 10, 2017, Goodman examined Coates after he broke his contact lens. Goodman wrote Coates needed a new lens as Coates' vision was adequate with the lens in place. *Id.* at 29. Coates' vision in his right eye was assessed as counting fingers at 2 feet and his left eye as counting fingers at eight feet. *Id.*

On June 12, 2017, Coates reported to Stacy Mast, R.N. that it had been two weeks since he had seen optometry for new contacts and he was having difficulty seeing. He was referred to optometry. *Id*. at 30.

On August 23, 2017, Goodman saw Coates to measure him for a new scleral lens for his left eye. Goodman wrote "Dr. Brooks will double check then order."[8] Coates' right eye vision was assessed as counting fingers at two feet, and his left vision at counting fingers at 2 feet. *Id.* at 32, 33.

On November 8, 2017, Goodman met with Coates, gave him the new lens, and discussed its proper cleaning and maintenance. The vision in Coates' right eye was assessed as counting fingers at two feet, and as counting finger at 2 feet for his left eye. *Id.* at 34.

On December 19, 2017 and January 4, 2018, Coates asked Pierce to prescribe Tylenol #3 for him, reporting that he was recently seen by an ophthalmologist who suggested he use the medication for pain control. Pierce found no such recommendation for Tylenol #3 in the ophthalmology notes. *Id*. at 36, 37. Pierce stopped the December 19, 2017 visit due to safety concerns. *Id*. at 36.

On April 18, 2017, Coates complained to Pierce of severe left eye pain and blurred vision. Pierce observed swelling and excessive tear production. Coates reported he immediately removed

---

[8] Dr. Brooks is an optometrist. ECF No. 27-5 at 18.

his contact lenses in case they caused the problems. He denied any injury. Pierce notified Dr. Getachew, and Coates was sent to the emergency room at the Western Maryland Regional Health System (WMRHS), where he was referred to and seen the same day by Wendye C. BanBrakle, MD. BanBrakle diagnosed Coates as having acute hydrops of the cornea. *Id.* at 42, 44-45, 46-48, 49. The vision in Coates' right eye measured 20/200 and measured 20/400 in his left eye. BanBrackle recommended atropine eyedrops once daily, Muro eye drops four times daily and prednisone acetate.[9] She recommended Coates see his primary care physician for pain medication. *Id.* at 49.

Coates returned to NBCI later that day where he was seen in the infirmary by Krista Self, a nurse practitioner, who gave him an eye patch for comfort, ordered Atropine Sulfate and Muro 128 drops for him, submitted a consultation for an ophthalmology consultation, and cleared him to return to his housing. *Id.* at 50- 52.

On May 9, 2018, Dr. Goodman saw Coates for keratocanus in both eyes and acute hydrops in his left eye. Coates' vision in both eyes was assessed as counting fingers at 1 foot. Goodman noted Coates was unable to wear his contact lenses and reported being in severe pain. Goodman recommended Coates continue the Muro 128, and indicated Coates needed a consultation to evaluate him for a corneal transplant. *Id*. at 55, 56.

When Goodman met with Coates on June 2, 2018, the hydrops had not resolved. Goodman recorded that Coates was unable to wear his contact lenses and was "awaiting transplant." *Id*. at 59.

On September 10, 2018, Coates was seen at the University of Maryland Medical System (UMMS) to plan for his corneal transplant. The ophthalmologists at UMMS indicated Coates "has

<hr>

[9] *See* ECF No. 29 nn. 7, 8, 9.

had a progressive decline in vision in both eyes over the last 8 years. Also had a recent episode of hydrops in the left eye." *Id*. at 59. Further, they noted Coates "has persistent eye pain intermittently in both eyes [for] which he is using Motrin without difficulty." *Id*. They determined that the corneas in both eyes will likely need a PK, but there was a possibility of performing a deep anterior lamellar keratopasty (DALK), a different surgical procedure in the left eye.[10] It was recommended that Coates be prescribed cyclogyl[11] twice daily for his pain and that he continue to use Muro 128. *Id.* at 69.

On February 14, 2019, [12] Coates was seen by Dr. Goodman. The medical record of the visit indicates that Coates was waiting for corneal transplants, had not returned to UMMS since his September 2018 medical appointment, and Goodman would follow up with the outside specialist as needed. Goodman continued the prescription for Muro 128 eye drops. *Id.* at 72.[13]

### A. Claims Against Wexford

Coates claims Wexford is in breach of contract. To the extent he is referencing Wexford's contract with the State of Maryland to provide medical services to inmates in state correctional facilities, Coates is not a party to that contract. At most he is a third party beneficiary, and in any event, his unsupported legal conclusions fail to establish how Wexford's actions or inactions caused him constitutional harm.

Coates also alleges Wexford hired unqualified staff. He does not allege which staff members were unqualified, in what way they were unqualified, or how this resulted in constitutional injury to him. Further, even if Coates intends to raise a supervisory liability claim

---

[10] *See* ECF No. 29 n. 10.
[11] This medication is used to dilate the pupils and works by blocking certain receptors found in the eye to temporarily relax the eye muscles. See https://medlineplus.gov/druginfo/meds/ (viewed July 25, 2019).
[12] On January 1, 2019, Wexford ceased being the medical and utilization management contractor for DPSCS facilities. ECF 29 at 10.
[13] The record does not indicate whether Coates has since received corneal transplants.

based on Wexford's hiring practices, he fails to argue or allege facts that Wexford had knowledge of employee conduct that posed a pervasive and unreasonable risk of constitutional injury to him, which is required to state such a claim. *See Shaw*, 13 F.3d 791, 799 (4th. Cir. 1994). For these reasons, even viewing the facts alleged in the light most favorable to Coates, he has not met his burden to show a genuine dispute of material fact to support a constitutional claim. Accordingly, summary judgment will be entered in favor of Wexford.

### B. Claims Against Pierce

Pierce denies Coates' allegation that she refused to see him at sick call, refused to prescribe pain medication other than Motrin for his eye pain, and refused him surgery. Pierce denies these allegations. Affidavit of Holly Pierce, NP, ECF No. 29-6 ¶¶4-6. She attests that she prescribed Motrin for Coates' pain, as well as alternative NSAID[14] medications including Mobic and Tylenol. She also prescribed Tegretol which is used for treating nerve pain. She also notes that ophthalmology had advised that keratoconus typically does not present with pain, and Coates' requested medication, Tylenol #3 was not indicated for long term use for chronic pain. *Id*. ¶4; *see also* Getachew Aff. ECF No. 29-5 ¶7.

The medical records demonstrate that Pierce recognized Coates' serious medical needs, prescribing him medications for his pain, and referred him to a primary medical provider and ophthalmologist when indicated. Coates' disagreement with Pierce's decision to stop his Tylenol #3 does not amount to an Eighth Amendment violation. Disagreement with a particular method of treatment, without more, does not amount to deliberate indifference *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) *United States v. Clawson*, 650 F.3d 530, 538 (4th Cir. 2011)*see also Jackson*, 775 F.3d at 178 (stating that although hindsight suggests that treatment decisions may

---

[14] NSAIDS are nonsteroidal anti-inflammatory drugs treat pain. *See* https://www.cancer.gov/publications.

have been mistaken, where plaintiff's claim against a provider is essentially a disagreement between inmate and medical provider over the inmate's proper medical care, such disagreements to fall short of showing deliberate indifference). Assuming Pierce, as Coates' alleges, told him his requests for Tylenol #3 were attempts "just … to get high," her statement does not amount to a constitutional violation. Importantly, she explained to him that the medication was not indicated for chronic long-term pain and offered him alternative medications, dispelling suggestion of deliberate indifference to his medical needs. ECF No. 6 at 1, ECF 29-4 at 19, 36, 37.

Pierce states she is not authorized to unilaterally order surgery, and notes that Coates does not specify the type of surgery she allegedly refused him. Pierce Aff. ECF No. 29-6 ¶4. Ophthalmologic surgery decisions are beyond the scope of Pierce's authority and practice, and when Coates presented such concerns, she consulted his primary care physician or referred him to an ophthalmologist. *Id.* ¶8; ECF No. 29-4 at 19, 42. Coates provides no evidence to dispute this information. Pierce did not provide unconstitutional treatment by failing to order surgery for Coates where she had no authority to do so.

Viewing in the light most favorable to Coates, the Court finds there is no genuine dispute of material fact to support a constitutional claim against Pierce. Accordingly, Pierce's unopposed Motion for Summary Judgment will be granted.

### III.     Claims Against the State Defendants

The verified records and declarations filed by the State Defendants in response to Coates' allegations establish that on December 21, 2015, Coates filed ARP NBCI-2633-15. ECF No. 27-5 at 2. Coates alleged he was refused surgery by an ophthalmologist because he has "one somewhat of a good left eye that has a contact in it but his right eye is worse." *Id.* Coates complained he was in constant pain, the Motrin he is given does not stop the pain, and he has been

continually complaining to Dr. Summerfield and others about his eyesight and his pain. Coates stated he wanted the Warden to pay for surgery and provide him with a second opinion. He asserted his rights were being violated per DCD 200.1. *Id*. at 2-3. Sue Brant, RN, prepared the ARP case summary dated January 11, 2016, which indicated: (1) Coates was seen by Summerfield on October 14, 2015 and prescribed eye drops; (2) Coates claimed the eye drops were not working; and (3) Coates was seen by a provider (Dr. Ashraf) on November 19, 2015, and was referred to see Summerfield. *Id*. at 2, 5,

> Bishop responded to the ARP based on these findings:

> Our review of your administrative remedy has been completed and your case has been deemed meritorious in part in accordance with DCD 185-001. Specifically, you claim that you are not being treated for your eye pain. An investigation revealed that you were seen by Dr. Summerfield on October 14, 2015 and he ordered you eye drops; however you claim they were not working. You were seen by a provider on 11-19-15 and referred back to Dr. Summerfield. It is noted that you are currently scheduled to see Dr. Summerfield at NBCI.

*Id*.at 2. The State Defendants aver that Bishop found the ARP meritorious in part because Coates was receiving ongoing treatment for his eyes and was claiming the treatment was not working, but his ophthalmologist continued to address his concerns. ECF No. 27 at 5.

On January 28, 2016, Coates appealed the Warden's determination to the Commissioner of Correction because the relief he had requested in the ARP had not been granted. *Id.* at 7-8.

On February 26, 2016, Bishop issued an Amended Response and dismissed ARP NBCI-2633-15, stating:

> Our review of your administrative remedy has been completed and your case has been found dismissed in accordance with DCD 1850001. Specifically, you claim that you are not being treated for your eye pain. An investigation revealed that you were seen by Dr. Summerfield on 19-14-15 and he ordered you eye drops; however you claim they were not working. You were seen by a provider on 11-19-15 and referred back to Dr. Summerfield. You were seen by Dr. Summerfield on 01-13-16 and you are scheduled again in May 2016. A second opinion is recommended

at UMMS ophthalmology for your eye issues. In all, it appears you are receiving proper care.

*Id.* at 9.

Coates filed three other pertinent ARPs during this time period.[15] On January 21, 2016, he filed ARP NBCI-0163-16, alleging that NBCI failed to comply with OPS 185.002 by failing to provide him the surgery sought in ARP NBCI 2633-151. The ARP was dismissed for procedural reasons and because the issues presented had been resolved in NBCI 2633-151. ECF No. 27-5 at 11-12.

On July 13, 2017, Coates filed ARP NBCI-1637-17, stating "I need the warden to entervien [sic] on my behalf." ECF No. 27-5 at 13. Coates claimed he was "legally blind" and in the past four months, his eye doctor had cancelled his appointments twice. He claimed he had no vision to read or write and needed the Warden to schedule an appointment for him that does not get cancelled. *Id*. at 13. On July 17, 2017, the ARP was dismissed for procedural reasons because additional information was needed to investigate the request. Coates was instructed to provide by August 1, 2017, the specific dates that his appointments were cancelled. *Id.*

Coates resubmitted ARP NBCI-1637-17, on July 25, 2017, presenting the same allegations as before and adding that "the eye doctor ophthalmology" had cancelled his appointment on July 5, 2017. *Id*. at 27-5 at 15. He claimed he was supposed to see an eye doctor every 90 days. He further stated that it was not his "job to do any investigation, it is the warden[sic] job to find out why my eye doctors [sic] appointment keeps getting cancelled." *Id*. at 16.

Coates was interviewed as part of the investigation of NBCI-1637-17. The investigator

---

[15] Coates also filed grievance IGO No. 20160766, with the Inmate Grievance Office, appealing the disposition of ARP NBCI, 0327-16 and alleging he was refused surgery and adequate treatment for his left eye. The IGO administratively dismissed the grievance on October 19, 2016, as beyond its jurisdiction. Declaration of Samiyah Hassan, IGO Administrative Officer, ECF No. 27-2. That ARP is not on the list submitted by the State Defendants. EC No. 27-5 at 10.

determined that: (1) Coates was seen on May 10, 2017 for an ophthalmology visit; (2) Coates' vision was inadequate with his current lens and he needed new ones; (3) Coates was scheduled for a return appointment in two months; (4) on June 12, 2017, he was seen by a nurse for left eye pain and referred to optometry for evaluation; and (5) on August 23, 2017, Coates was fitted for a new lens by an ophthalmologist and Dr. Brooks in Optometry was scheduled to double check the fitting *Id.* at 18. Coates was notified of these findings, and the ARP was dismissed on September 18, 2017. Coates was directed to use the sick call process if he had questions or concerns about his medical issues. *Id.*

Coates filed ARP, NBCI-2206-17 on September 20, 2017. He complained the "nurses or the eye doctor isn't giving me any pain relief for my eye pain that I am having constantly-continued to wake me out of my sleep." *Id*. at 19. He asserted that he needs surgery on both eyes because he has keratoconus. The ARP was dismissed on September 20, 2017, as repetitive to complaints that had been resolved in ARP NBCI-1637-17. *Id.*

### A. Eleventh Amendment Immunity

The State Defendants argue that DPSCS, as an agency of the State of Maryland is immune from suit in federal court under the Eleventh Amendment and Warden Bishop is immune from suit in his official capacity under the Eleventh Amendment, and no constitutional violation occurred based on the alleged failure to comply with DOC policies and procedures.

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or subjects of any Foreign State." Thus, states generally enjoy immunity from suits brought in federal court by their own citizens. *See Hans v. Louisiana*, 134 U.S. 1, 3 (1890); *see also Board of Trustees of University of Alabama v. Garrett*,

531 U.S. 356, 363 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting states may not be sued by private individuals in federal court."); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984). A private individual is barred from bringing a suit against a state in federal court to recover damages, unless the state consents or there is an exception to sovereign immunity. *See Coleman v. Court of Appeals of Md.*, 556 U.S. 30, 35 (2012). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-202(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court.

State agencies such as DPSCS, *see* Md. Code. Ann., Corr. Servs. § 1-101(f), "are not persons within the meaning of the statute." *Lawson, v. Green*, 2017 WL 3638431, at *4 (citing *Will v. Michigan*, 491 U.S. 58, 70 (1989)); *see also Clark v. Md. Dep't of Pub. Safety & Corr. Servs.,* 316 Fed.Appx. 279, 282 (4th Cir. 2009)("[T]he Maryland Department of Public Safety and Correctional Services is undoubtedly an arm of the state for purposes of § 1983" and therefore "immune from a suit under § 1983.") (citing *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280–81 (1977) ). Thus, the claims against DPSCS, an agency within the State of Maryland, are barred by the Eleventh Amendment.

The Eleventh Amendment also bars claims against state employees in their official capacity. *See Gray v. Laws*, 51 F.3d 426, 430 (4th Cir. 1995) ("state officers acting in their official capacity are also entitled to Eleventh Amendment protection"). "A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Bishop is a state employee. Consequently, claims for monetary damages against Bishop in his official capacity will be dismissed for failure to state a

claim on which relief can be granted. Moreover, Coates claims, to the extent they seek prospective relief or are brought against Bishop in his personal capacity are unavailing as discussed below.

### B. Eighth Amendment Claim Against Bishop

Bishop states in his declaration that as Warden his responsibilities are to act as chief administrator of NBCI to oversee the safe, efficient, and lawful functioning of the institution. He states that inmates are provided health care by a private medical contractor, and it is beyond the scope of his duties and responsibilities to perform any kind of medical treatment on an inmate or to prescribe a particular course of treatment. Declaration of Warden Frank B. Bishop, Jr., ECF No. 27-3 at 1 ¶¶3-5. Bishop states he has no authority to dictate the type of medical treatment an inmate receives from a medical provider, nor does he have authority to influence medical decisions rendered by private health providers contracted to work with the State. *Id*. ¶6. Bishop denies having been involved in, interfering with, or delaying medical care to Coates. *Id*. at ¶7.

Coates claims Bishop failed to intervene on his behalf. Coates, however, fails to explain how he expected Bishop, who is not a medical provider and has no authority to perform or compel the performance of treatment, to intervene. When Coates accessed the ARP process to complain about his medical care, his claims were investigated, the findings reported to prison officials, and a response was provided to him.

In order to hold a nonmedical supervisors liable for to establish an Eighth Amendment claim for deliberate indifference to an inmate's serious medical need, an inmate must to show that the correctional official (1) failed promptly to provide needed medical care; (2) "deliberately interfered with the prison doctors' performance"; or (3) "tacitly authorized or were indifferent to the prison physicians' constitutional violations." *Miltier*, 896 F.2d at 854. Bishop as correctional official may rely on the expertise of medical providers. *See Shakka v. Smith*, 71 F.3d 162, 167

(4th Cir. 1995); *see also Miltier,* 896 F.2d at 854-55 (4th Cir. 1990) (supervisory prison officials may rely on professional judgments of medical providers but may be found deliberately indifferent based on intentional interference in an inmate's medical care.

Bishop was not in a position to order or provide medical care to Coates. Bishop did not violate policy or procedure because he did not prevent care from being provided. There has been no showing that medical providers were failing to treat Coates, nor was Bishop presented with an emergency need that he failed to report. Coates provides no evidence Bishop purposely hindered his access to medical treatment or otherwise acted with deliberate indifference to his serious medical needs in order to state an Eighth Amendment claim for denial of medical care. Accordingly, the Court will grant summary judgment in favor of Bishop.

## CONCLUSION

For the reasons set forth in this Memorandum Opinion, the Court will DENY WITHOUT PREJUDICE the Motion for Appointment of Counsel (ECF No. 40). Summerfield's Motion to Dismiss Coates' state claims of negligence and malpractice (ECF 17) IS GRANTED. Summerfield SHALL FILE a response within 28 days to Coates' Eighth Amendment claims. The State Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgement, treated as a Motion for Summary Judgment, (ECF No. 27) IS GRANTED. The Medical Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgement, treated as a Motion for Summary Judgment, (ECF No. 29) IS GRANTED. A separate Order follows.

_____/s/_____
PETER J. MESSITTE
United States District Judge

July 29, 2019