# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TYRONE M. COATES, | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. PJM-18-3281 |
| MICHAEL SUMMERFIELD, M.D., | * | |
| Defendant | * | |
| | *** | |

## MEMORANDUM OPINION

Pending is Dr. Michael Summerfield's Motion to Dismiss or for Summary Judgment the Eighth Amendment claims against him. ECF No. 43. Plaintiff Tyrone M. Coates filed an Opposition[1] to which Summerfield filed a Reply. ECF Nos. 45, 46. After reviewing the parties' submissions, the Court determines that a hearing is unnecessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, Defendant's Motion (ECF No. 43 ), treated as a Motion for Summary Judgment, will be GRANTED.

## BACKGROUND

In this case, Coates raised claims against Summerfield and four other Defendants, the Department of Public Safety and Correctional Services (DPSCS), Warden Frank Bishop Wexford Health Sources, Inc (Wexford), and Nurse Practitioner Holly Pierce. On July 29, 2019, the Court granted unopposed Motions for Summary Judgment filed by Bishop, the DPSCS, Wexford, and Pierce. ECF Nos. 27, 29, 40, 42. The Court granted Summerfield's Motion to Dismiss (ECF No. 17), dismissed Coates' state law negligence and malpractice claims without prejudice, and because the Motion did not address Coates' Eighth Amendment medical care claim, ordered Summerfield

---

[1] Coates was notified of Summerfield's Motion to Dismiss or for Summary Judgment and that he was entitled to file an opposition with supporting materials, including affidavits, declarations and other records. ECF No. 44. He filed no exhibits, affidavits or declarations with his opposition. ECF No. 45 at 7.

to file a response within twenty-eight days addressing the constitutional claim. The facts and standard of review set forth in the Court's July 29, 2019, Memorandum Opinion which accompanied that Order are incorporated here by reference.

Coates is an inmate at North Branch Correctional Institution (NBCI), who is diagnosed with keratoconus in each eye. Coates alleges that Summerfield provided constitutionally inadequate medical care to him by refusing his requests for corneal transplant surgery on "multiple occasions." Complaint, ECF No. 1 at 2; *see also* ECF No. 6 at 1. Specifically, Coates alleges that Summerfield denied him surgery because "he said I have a somewhat of a good eye because my left eye had a contact in it. Plus he claims that I get into to[o] much fight[s] and if something wrong happens I won't get to the hospital fast enough … because I am in jail." *Id.* Notably, Coates does not state when Summerfield purportedly denied his requests nor does he provide additional facts in support of his allegation.

The cause of keratoconus is unknown and there is no cure, although progression of the disease can sometimes be delayed. Getachew Decl., ECF No. 29-5 ¶5. Keratoconus is generally treated with glasses, contact lenses, and, as a last resort surgery. *Id.* The record evidence demonstrates that on January 13, 2016, Summerfield saw Coates, who reported right eye discomfort, aching, and tearing, without his contact lens. Summerfield observed keratoconus in both eyes, but noted no inflammation or other explanation for Coates' subjective pain. ECF No. 29-4 at 5, 6. Coates told Summerfield that he wanted a corneal transplant for the pain. *Id*. Summerfield discussed with Coates that surgery "is not usually a good solution for pain and is usually reserved for when vision needs to be restored." *Id*. Summerfield referred Coates to the University of Maryland Medical System for a second opinion. *Id.* at 2-6.[2]

---

[2] The results of the referral are not in the record.

On March 9, 2016, Summerfield examined Coates, noting that he was wearing his lenses and there was improved vision in his corrected left eye. Summerfield reserved consideration for penetrating keratoplasty (PK) in the right eye.[3] He referred Coates to optometry for glasses to wear with the lenses. *Id*. at 7.

Summerfield examined Coates again on May 11, 2016. Coates' vision measured the same as it had at his March 9, 2016 examination. Coates again asked for a corneal transplant. Summerfield noted Coates' history of involvement in assaults and that he was hit last year in his left eye.[4] They discussed risks of surgery including post-operative wound leak, glaucoma, cataract formation, and corneal rejection. Summerfield indicated that he was unconvinced the benefits outweighed the risks of the surgery in this instance. *Id*. at 8. During this time, Coates was receiving nonsurgical treatment for his eye condition with special contact lenses and various prescription medications. *Id.* at 12, 17, 19, 21.

The record shows that ophthalmologist Paul Goodman, M.D., examined and treated Coates for his ocular complaints. *Id*. at 26, 29, 32-34, 55-56, 59. On September 10, 2018, Coates was seen at the University of Maryland Medical System (UMMS) to plan for his corneal transplants, and the record indicates that he is awaiting transplant surgery. *Id.* at 72.[5]

In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of a defendant, or his failure to act, amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Anderson v. Kingsley,* 877 F.3d 539, 543 (4th. Cir. 2017). Deliberate indifference to a serious

---

[3] Penetrating keratoplasty (PK) is a type of corneal transplant surgery. ECF No. 29 n. 3; *see also* https://medlineplus.gov/ency/article/003008.htm (viewed July 25, 2019).
[4] Defendants footnote in their Memorandum Opinion, a medical journal which they assert states that PK presents a greater vulnerability to trauma after surgery. ECF No. 29-4 at 8.
[5] The record does not indicate whether Coates has since received corneal transplants. ECF No. 27-4.

medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure it was available. *See Farmer v. Brennan*, 511 U.S. 825, 834-7 (1994); *see also Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209-10 (4th Cir. 2017); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016). Proof of an objectively serious medical condition, however, does not end the inquiry.

Delay in providing medical treatment may amount to deliberate indifference. *Smith v. Smith*, 589 F.3d 736, 739 (4th Cir. 2009) (citing *Estelle*, 429 U.S. at 104-05). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it. . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgment, even though such errors may have unfortunate consequences." *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999); *see also Jackson*, 775 F.3d at 178 (describing the applicable standard as an "exacting" one). Deliberate indifference may be shown where a plaintiff demonstrates the delay in medical care caused him to suffer substantial harm. *See Webb v. Hamidullah*, 281 F. App'x 159, 166 (4th Cir. 2008). Substantial harm can be shown by "lifelong handicap, permanent loss, or considerable pain." *Shabazz v. Prison Health Servs. Inc.*, No. 3:10CV190, 2011 WL 3489661, at *6 (E.D. Va. 2011) (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)). A mere disagreement over a medical judgment, however, does not state an Eighth Amendment claim. *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977). There is frequently more than one way to treat a medical condition. *See White v. Napoleon*, 897 F.2d 103, 109-10 (3d Cir. 1990)("If a plaintiff's disagreement with a doctor's professional judgment does not state a violation of the Eighth Amendment, then certainly no claim is stated when a *doctor* disagrees with the professional judgment of another doctor. There may, for example, be several acceptable ways to treat an

illness.")

The objective seriousness of Coates' ophthalmological conditions is not in dispute. The medical records demonstrate that Summerfield recognized Coates' serious medical needs, prescribing medications for him, as well as referring him to an optometrist and for a second opinion at the University of Maryland Medical System. Coates' disagreement with Summerfield's assessment that the benefits of surgery were outweighed by the possible risks shows a difference of opinion over the method of treatment, which without more as is the case here, does not amount to deliberate indifference *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) *United States v. Clawson*, 650 F.3d 530, 538 (4th Cir. 2011); *see also Jackson*, 775 F.3d at 178 (stating that although hindsight suggests that treatment decisions may have been mistaken, where plaintiff's claim against a provider is essentially a disagreement between inmate and medical provider over the inmate's proper medical care, such disagreements to fall short of showing deliberate indifference). Importantly, Coates does not allege that Summerfield refused to treat him; rather, he takes issue with Summerfield for not agreeing on two occasions to his requests for corneal transplant surgery. Viewing the allegations and evidence in a light most favorable to Coates, the Court finds there is no genuine dispute of material fact to support an Eighth Amendment claim of deliberate indifference. Accordingly, Summerfield is entitled to summary judgment in his favor as a matter of law. The Court will grant the Motion for Summary Judgment.

## CONCLUSION

For the reasons stated, the Court will in the Order that follows grant Summerfield's Motion for Summary Judgment.

September 13, 2019

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE